**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 21-cv-03340-NYW-STV
(Consolidated with Civil Action Nos. 23-cv-00695-NYW-STV and 25-cv-01258-NYW-STV)

PETER NOE,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on Defendant's Motion for Summary Judgment as to Case No. 25-cv-01258 ("Motion" or "Motion for Summary Judgment"). [Doc. 262]. The Motion is fully briefed and ripe for disposition. [Doc. 267; Doc. 270]. The Court concludes that oral argument would not materially assist in the resolution of the Motion. For the reasons set forth below, the Motion is respectfully **DENIED**.

## BACKGROUND

This Court draws the following facts from the record before it on summary judgment, and the entire docket. This case arises out of Plaintiff Peter Noe's ("Plaintiff" or "Mr. Noe") allegations that Defendant United States of America ("Defendant," the "United States," or the "Government") provided him with negligent and inadequate medical care in the treatment of bladder and back issues from 2021 to 2023, resulting in

worsening conditions and pain. *See generally* [Doc. 102].[1] Mr. Noe is a federal inmate at ADMAX, a prison within the Federal Bureau of Prisons ("BOP"). Over the last five years, he has filed three separate actions against the United States regarding similar allegations of inadequate medical care: the instant action ("*Noe I*"), Case No. 23-cv-00695-NYW-STV ("*Noe II*"), and Case No. 23-cv-01258-NYW-STV ("*Noe III*"). Ultimately, these three cases were consolidated into this instant action, with one operative FTCA claim spanning acts from late 2020 through August 14, 2023.

Defendant now moves for summary judgment as to a portion of Mr. Noe's FTCA claim on the grounds that Plaintiff failed to timely file *Noe III* after the BOP denied the November 23, 2024, SF-95 that adequately exhausted Mr. Noe's complaints arising on or after July 8, 2022 through August 14, 2023. [Doc. 262]. Plaintiff opposes, arguing that the portion of his FTCA claim for acts arising on or after July 8, 2022 through August 14, 2023 were exhausted by his August 27, 2024, SF-95. [Doc. 267]. The United States has replied. [Doc. 270].

## UNDISPUTED FACTS

1. Prior to filing the *Noe I* and *Noe II* lawsuits, Plaintiff filed at least three administrative tort claims with the BOP (i.e., "SF-95s") regarding the allegations underlying those claims. [Doc. 262 at ¶ 8; Doc. 267 at 4 ¶ 8].

---

[1] This court uses the convention of [Doc.___] and the page number assigned by the Electronic Court Files System ("ECF") for this District to refer to materials filed in this action. For docket entries from other cases, the court refers to the case number or designation, and then uses the convention [ECF No. ___].

2. Those three SF-95s involved medical care related to Mr. Noe's alleged urologic symptoms and back pain, including four slipped and herniated disks in his back. [Doc. 262 at ¶¶ 9–12; Doc. 267 at 4 ¶¶ 9–12; Doc. 262-1; Doc. 262-2; Doc. 262-3].

3. On December 13, 2021, Mr. Noe filed *Noe I*, asserting two claims against the United States and certain BOP medical providers: (1) a deliberate indifference Bivens claim pursuant to the Eighth Amendment, and (2) a medical malpractice claim under the Federal Tort Claims Act ("FTCA") that came to encompass the time period between late 2020 through May 10, 2021. *See* [Doc. 1; Doc. 102 at 7–29; Doc. 262 at ¶ 1; Doc. 267 at 3 ¶ 1].

4. Mr. Noe alleged that the basis for his FTCA claim in *Noe I* was administratively presented to the United States on May 10, 2021, and the United States did not respond. [Doc. 102 at 23]. *Noe I* was originally drawn to the Honorable Christine M. Arguello. [Doc. 7].

5. On March 17, 2023, Mr. Noe brought *Noe II* with the same two claims against a subset of the same Defendants as in *Noe I*. *See generally Noe II*, Case No. 23-cv-00695-NYW-STV, ECF No. 1; [Doc. 262 at ¶ 2; Doc 267 at 3 ¶ 2].

6. *In Noe II*, Mr. Noe alleges that, following May 10, 2021, he continued to receive negligent and unconstitutional medical care for the same or similar issues, forming the basis of a second administrative FTCA claim. *Noe II*, Case No. 23-cv-00695-NYW-STV, ECF No. 1 at ¶¶ 69–85.

7. Mr. Noe administratively presented the FTCA claim underlying *Noe II* to the United States, and the United States denied it on September 19, 2022. *Id.* at ¶ 16. Mr.

Noe also asserted a Bivens claim based in deliberate indifference to serious medical needs. *Id.* at ¶¶ 86–100.

8. *Noe II* was originally reassigned to Judge Arguello. *Noe II*, Case No. 23-cv-00695-NYW-STV, ECF No. 6. But on April 5, 2023, it was reassigned to the undersigned judicial officer. *Id.*, ECF No. 8.

9. Eventually, both *Bivens* claims were dismissed in *Noe I* and *Noe II*, and the two cases with their respective FTCA claims were consolidated by Order dated October 4, 2023, with *Noe I* as the lead case and Judge Arguello as the presiding judge. [Doc. 157; Doc. 191].

10. Then, on November 14, 2024, the United States moved for summary judgment as to the consolidated FTCA claim ("First Motion for Summary Judgment"), arguing, inter alia, Mr. Noe had failed to exhaust any claims arising after July 7, 2022—the last administrative complaint he filed prior to the filing of *Noe II*. [Doc. 211 at 10]. The United States further argued that any administrative complaints filed after March 17, 2023 could not cure the failure to exhaust. [*Id.* at 11].

11. In his Response to the First Motion for Summary Judgment ("Response to First Motion for Summary Judgment") filed January 14, 2025, Mr. Noe, through counsel, conceded that he had not yet exhausted his post-July 2022 allegations. [Doc. 221 at 12–13].

12. By the time of his Response to First Motion for Summary Judgment, Plaintiff had filed at least two additional SF-95s regarding his medical care related to his lower back: (1) TRT-NCR-2024-03488 (the "November 27, 2023, SF-95"), and (2) TRT-NCR-

2025-01340 (the "August 27, 2024, SF-95"). [Doc. 262 at ¶ 15; Doc. 267 at 4 ¶ 15; Doc. 262-5; Doc. 262-6].

13. The November 27, 2023, SF-95 reflects "I recently as of last year hurt my upper back . . . . Dr. Oba and P.A. Maltezo said I compensated for my lower back pain for so long that I blew a disk in my upper back by denying me care for my lower back their recklessness caused this injury." [Doc. 262-5 at 2].

14. On or around April 11, 2024, the BOP mailed the denial of Plaintiff's November 27, 2023, SF-95. [Doc. 262 at ¶ 22; Doc. 267 at 5 ¶ 22]; *see also* [Doc. 262-8].

15. But in his Response to First Motion for Summary Judgment, Mr. Noe only mentions the August 27, 2024, SF-95, representing that:

> Previously, Plaintiff's counsel had sent to defense counsel the SF-95 that Mr. Noe submitted on or about August 27, 2024, and presumably BOP also provided to defense counsel a copy the submitted claim. During the parties' conferral, undersigned counsel asked defense counsel whether Defendant would agree to a stay in this matter until after BOP decided (and almost certainly denied) the August 24, 2024, SF-95 so that Mr. Noe could file another lawsuit based on those allegations and consolidate it with this case. Defense counsel indicated that they did not want to further delay the resolution of this matter.

[Doc. 221 at 12].[2]

16. The August 27, 2024, SF-95 alleged that medical care for Mr. Noe's lower back provided by Dr. Oba "was inadequate and excessively delayed" and that the "BOP provided severely inadequate and delayed treatment for disc herniation and degeneration." [Doc. 262 at ¶¶ 23–24; Doc. 267 at 5 ¶¶ 23–24; Doc. 262-6 at 2]. It

[2] It is not clear whether counsel for either Party had knowledge of the November 17, 2023, SF-95, and its denial, at that juncture.

incorporated by reference the certain prior SF-95s; however, it did not mention the November 27, 2023, SF-95. [Doc. 262 at ¶¶ 26–27; Doc. 267 at 5 ¶¶ 26–27].

17. On February 5, 2025, following the summary judgment briefing but before the Court's ruling, the United States denied Mr. Noe's August 27, 2024, SF-95. [Doc. 262 ¶ 28; Doc. 267 at 5 ¶ 28].

18. The Court granted in part and denied in part the United States' motion for summary judgment on May 14, 2025, dismissing without prejudice the portion of Mr. Noe's FTCA claim relating to alleged medical negligence from July 7, 2022 through August 14, 2023 based on failure to exhaust administrative remedies. [Doc. 233 at 5].

19. The Court denied summary judgment as to the remainder of Mr. Noe's FTCA medical negligence claim, including but not limited to:

- whether Dr. Oba's failure to personally evaluate Mr. Noe until nine months after Mr. Noe's initial complaint was reasonable;
- whether Physician Assistant Seroski's referral to Dr. Oba was timely;
- whether the delay in Mr. Noe's appointment with a urologist was reasonable;
- whether Dr. Oba's failure to suspect a non-urinary or spinal source of Mr. Noe's symptoms was reasonable;
- whether the delay in administering pain medication to Mr. Noe was reasonable;
- whether Dr. Oba's review of Mr. Noe's urology clinical documentation was appropriate or reasonable; and
- whether the delay in Mr. Noe obtaining an MRI of his lumbar spine after it was allegedly recommended by a urologist was reasonable.

[*Id.* at 10].

20. Mr. Noe then filed *Noe III* on April 21, 2025, bringing an FTCA claim against the United States based on the August 24, 2024, SF-95. *Noe III,* Case No. 25-cv-01258-NYW-STV, ECF No. 1 at ¶ 10.

21. Plaintiff moved to consolidate *Noe III* with the already-consolidated *Noe I* and *Noe III.* [Doc. 234]. The Government opposed consolidation. [Doc. 238]. The Government argued in opposition that consolidation would be futile, because *Noe III* was untimely based on Mr. Noe's failure to file the action within six months of his November 27, 2023, SF-95. [*Id.* at 5–9].

22. Judge Arguello rejected the Government's argument, observing:

> The Court notes that the United States opposes Mr. Noe's Motion to Consolidate alleging that *Noe III* presents claims that are untimely under the Federal Tort Claims Act's time limitations. *See* (Doc. # 238). However, as Mr. Noe points out in his reply, the United State[s'] argument is based on a misreading of Mr. Noe's November 27, 2023, SF-95 form (*see* Doc. # 238-1), which, contrary to Defendant's assertion, does not underlie Mr. Noe's recent lawsuit, *Noe III*, nor cause Mr. Noe's August 27, 2024, SF-95 form (Doc. 238-2), to be successive and a second "bite at the apple." *See* (Doc. # 242 at 1). The allegations Mr. Noe made in his August 27, 2024, SF-95 form and that form the basis of *Noe III* relate to alleged inadequate care by BOP through August 14, 2023, in treating what was ultimately diagnosed as disc herniation and degeneration and nerve impingement in Mr. Noe's ***lower back*** ("L4-S1 foraminal stenosis contacting the right L4 nerve root and encroaching on left L4 nerve root, as well as encroachment on the descending right S1 nerve root"). *See* (*id.* at 1–2) (citing Doc. # 238-2 at 4). Mr. Noe's November 27th SF-95 form alleges an injury to his ***upper back***. *See* (*id.* at 2) (citing Doc. # 238-1) ("I recently as of last year hurt my ***upper back*** .... I compensated for my lower back pain for so long that I blew a disk in my upper back, by denying me care for my lower back [BOP medical providers'] recklessness caused this injury." (Emphasis in original)). Accordingly, the injury forming the basis of Mr. Noe's claim presented in his November 27, 2023, SF-95 form, an alleged "blown" disk in his upper back, is distinct from the injury forming the basis of Mr. Noe's claim in *Noe III*, which is deficient care provided to diagnose and treat Mr. Noe's lower back injury. *See* (*id.*) (citing No. 25-cv-1258, (Doc. # 1)). Mr. Noe's lower spine condition formed the basis of *Noe I* and *Noe II* (consolidated here), but because some aspects of BOP's alleged failure to provide adequate care for that condition occurred after Mr. Noe submitted to BOP the claims on

> which *Noe I* and *Noe II* were based—such as the December 2022 neurosurgery consult and August 2023 surgery—Mr. Noe needed to submit a new SF-95 form to exhaust those allegations. *See* (*id.*). Thus, Mr. Noe's allegations in *Noe III*, which was filed less than six months after BOP denied the claim presented in Mr. Noe's August 27, 2024, SF-95 form (the Government denied the claim on February 5, 2025), are timely and not barred by the successiveness doctrine that the United States cites in its response. *See* (*id.* at 2–3).

[Doc. 244 at 5 n.1 (emphasis in original)].

23. Judge Arguello granted Plaintiff's Motion to Consolidate, and *Noe III* was consolidated into this action on June 19, 2025. [*Id.* at 6]. The three cases now proceed as a single, consolidated action with one cause of action for medical negligence pursuant to the FTCA. On October 3, 2025, due to Judge Arguello's inactive status, the consolidated action was reassigned to the undersigned judicial officer. [Doc. 254].

## LEGAL STANDARDS

### I. Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).

A movant that does not bear the burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986)). Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted). To satisfy this burden, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). And because "[s]ummary judgment is aimed at piercing the allegations of a complaint to assess the proof to ascertain whether is a genuine need for a trial," a plaintiff "cannot rely on the allegations of its complaint in responding to a summary judgment motion." *Gilbert v. Shalala*, 828 F. Supp. 815, 817 (D. Colo. 1993) (citing *Burk v. K Mart Corp.*, 956 F.2d 213, 215 (10th Cir. 1991)).

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Anderson*, 477 U.S. at 255. At all times, the Court views the record in the light most favorable to the nonmoving party, *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019), so long as the nonmoving party's version of the facts "find[s] support in the record," *Thompson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

## II. The Federal Tort Claims Act

Generally, the United States is immune from suit pursuant to the doctrine of sovereign immunity, which precludes federal jurisdiction. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). But "[t]hrough 28 U.S.C. § 1346(b)(1), the FTCA waives sovereign immunity for certain state

law tort claims against the United States." *Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017). "This unequivocal waiver of immunity must be construed narrowly and the limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (quotations omitted). The FTCA provides that the United States may be sued for damages for injuries

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). In other words, the FTCA waives sovereign immunity "with respect to certain injuries caused by government employees acting within the scope of their employment." *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997). But the FTCA's waiver of immunity is subject to exceptions. "When an exception applies, sovereign immunity remains, and federal courts lack jurisdiction." *Garling*, 849 F.3d at 1294.

Relevant here, "the FTCA has both an administrative-exhaustion requirement, set forth in 28 U.S.C. § 2675(a), and a statute of limitations, set forth in 28 U.S.C. § 2401(b)." *Barnes v. United States*, 776 F.3d 1134, 1139 (10th Cir. 2015). "Combined, these provisions act as chronological bookends to an FTCA claim, marking both a date before which a claim may not be filed and a date after which any filing is untimely." *Id.* First, the FTCA requires that all claims must be "presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Second, after administrative adjudication of the claim, any subsequent federal lawsuit must be filed

"within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." *Id.* Failure to meet either of these deadlines means that a claim is "forever barred." *Id.* "Failure to exhaust is an affirmative defense," *Rachel v. Troutt,* 764 F. App'x 778, 781 (10th Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)), for which the Government bears the burden of proof.

**ANALYSIS**

While his FTCA claim is based on medical negligence by the BOP and its employees from late 2020 through August 14, 2023, when Mr. Noe received spinal fusion and decompression surgery, Mr. Noe characterizes his third lawsuit as specifically seeking a remedy for the alleged acts of medical negligence of Defendant and/or Defendant's employees that occurred on or after July 8, 2022 through August 14, 2023 that were previously dismissed without prejudice for failure to exhaust. *See generally*, *Noe III*, Case No. 25-cv-01258-NYW-STV, ECF No. 1; [Doc. 267 at 3]. Mr. Noe alleges that, during this time, the BOP "provided severely inadequate and delayed treatment for disc herniation and degeneration and nerve impingement in [his] spine" and unreasonably delayed pain management despite Mr. Noe's repeated complaints of severe pain. *See Noe III*, Case No. 25-cv-01258-NYW-STV, ECF No. 1 at ¶¶ 12, 37–55.

In the Motion, the United States argues that the November 27, 2023, SF-95 covers Mr. Noe's complaints of negligent conduct between July 8, 2022 through August 14, 2023, and that *Noe III* is untimely because it was not filed within six months of the BOP's denial of that SF-95 on April 11, 2024. [Doc. 262 at 6–7 (citing 28 U.S.C. § 2401(b))]. The United States further contends that Mr. Noe's later submission of the August 27, 2024, SF-95 does not restart the six-month limitations period, because that SF-95 is duplicative

of the November 27, 2023, SF-95. [*Id.* at 7, 11]. Because both SF-95s "are based on the same acts or omissions," i.e., the "alleged failure to properly treat Plaintiff's lower back and lower back pain 'for years,'" the United States argues that the August 27, 2024, SF-95 is "a nullity." [*Id.* at 11].

In his Response to Defendant's Motion for Summary Judgment [Doc. 262], Plaintiff does not dispute that he did not file *Noe III* within six months of the BOP's denial of the November 27, 2023, SF-95, but he argues that the relevant clock is the one that started with the denial of the August 27, 2024, SF-95—the claim that in his view actually underlies *Noe III*. *See* [Doc. 267 at 3]. Plaintiff contends that the August 27, 2024, SF-95 alleges injuries that were not included in the November 27, 2023, SF-95 and therefore constitutes a distinct non-duplicative claim for the purposes of the FTCA. [*Id.*].

## I. Purpose of FTCA Exhaustion

The FTCA's notice requirement requires the claimant to present to the appropriate federal agency "(1) a written statement describing the injury in sufficient detail to allow the agency to begin an investigation into the possibility of potentially tortious conduct, and (2) a request for a sum certain in damages." *Lopez*, 823 F.3d at 976. The claim need not state legal theories or the "exact grounds upon which [the] plaintiff seeks to hold the government liable," but it must give "notice of the facts and circumstances underlying a claim." *Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 853 (10th Cir. 2005). Courts should "liberally construe the universe of facts that the FTCA claimant provides," but should not "augment those facts to conform to the claimant's subsequent civil complaint." *Benally v. United States*, 735 F. App'x 480, 485 (10th Cir. 2018). Whether

a plaintiff has satisfied the FTCA's notice requirement is a question of law. *Staggs v. U.S. ex rel. Dep't of Health & Hum. Servs.*, 425 F.3d 881, 884 (10th Cir. 2005).

**II. Successive Administrative Tort Claims**

A successive SF-95 that is duplicative of an earlier-denied SF-95 is "a nullity" for purposes of the six-month statute of limitations and cannot trigger a new six-month period during which a claimant may file a suit in federal court. *Román-Cancel v. United States*, 613 F.3d 37, 42–44 (1st Cir. 2010); *see also Willis v. United States*, 719 F.2d 608, 613 (2d Cir. 1983) ("There is equally little force in the contention that plaintiffs could escape the consequences of their failure to bring suit within six months of the denial of their claims by filing new claims within the allowable two year period."). The timeliness of Mr. Noe's complaints of alleged acts of medical negligence occurring on or after July 8, 2022 through August 14, 2023 thus turns on whether the August 27, 2024, SF-95 was a new claim or merely duplicative of the November 27, 2023, SF-95.

An SF-95 is duplicative when it is the "functional equivalent" of the original SF-95, *Román-Cancel*, 613 F.3d at 44, though "there is scant case law evaluating whether a successive administrative claim is the functional equivalent of the first," *Spinazzola v. United States*, No. 19-cv-00165-GKF-FHM, 2019 WL 6050723, at *5 (N.D. Okla. Nov. 15, 2019). The courts that have conducted this evaluation typically focus on whether the first SF-95 "provided the government sufficient notice of the relevant facts" forming the basis of the second SF-95. *See id.* at *5–6; *Broussard v. United States*, 52 F.4th 227, 229–30 (5th Cir. 2022). This is consistent with the general principle that the FTCA's exhaustion requirement is satisfied by "a written statement sufficiently describing the injury to enable the agency to begin its own investigation." *Lopez*, 823 F.3d at 976 (quotation omitted);

*see also Aguilar*, 397 F.3d at 853 (an administrative claim is sufficient under 28 U.S.C. § 2675(a) if it "provided notice that [the federal agency] should investigate the [conduct at issue]" and "provided the government with sufficient notice of" the claims in the legal complaint).

## III. Application

As an initial matter, this Court is puzzled by the United States's wholesale failure to acknowledge Judge Arguello's prior finding with respect to the two SF-95s at issue. *See generally* [Doc. 262; Doc. 270]. Defendant does not even address it on Reply, after it was specifically raised by Plaintiff in his Response. *Compare* [Doc. 267 at 9] *with* [Doc. 270]. This Court recognizes that the law of the case doctrine does not apply. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (observing that the Tenth Circuit has declined to apply the law of the case doctrine to rulings revisited prior to entry of a final judgment, concluding that "district courts generally remain free to reconsider their earlier interlocutory orders" even when the case is reassigned from one judge to another in the same court (quotation omitted)). But it is not clear that the United States would have even brought this instant Motion, and even more difficult to imagine that the Government would simply ignore the issue, had Judge Arguello remained the presiding judge, particularly given her own interest in decisional finality. *Cf. Gilbert v. USA Taekwondo, Inc.*, No. 18-cv-00981-CMA-MEH, 2021 WL 4291012, at *3 (D. Colo. Sept. 21, 2021) (applying the law of the case doctrine to attempts to re-litigate the application of the statute of limitations determination that she made earlier in the same case).

The Court next observes that the United States's arguments, and cited authorities, have not changed significantly since its filing of the Motion to Consolidate. *Compare* [Doc.

262] *with* [Doc. 238]. This Court's own ruling in *Curphey v. Wassell*, No. 21-cv-03433-NYW-JPO, 2024 WL 3760789, at *8 (D. Colo. May 10, 2024), cited by Defendant, is inapposite to this analysis. [Doc. 262 at 11]. In *Curphey*, the plaintiff admitted that his two administrative tort complaints arose from the same incident, but explained that his second SF-95 was "intended to supplement and/or amend" his first-filed administrative claim. *See Curphey*, 2024 WL 3760789, at *8 (D. Colo. May 10, 2024), *recommendation adopted in part and rejected in part,* 2024 WL 3759429 (D. Colo. Aug. 12, 2024). Mr. Curphey did not challenge the Magistrate Judge's legal analysis, but instead, asked the Court to be "more lenient." *Curphey*, 2024 WL 3759429, at *4.

Here, Plaintiff does not concede that the two SF-95s at issue cover the same conduct. The Parties do not cite any Tenth Circuit cases that apply in such circumstances, nor did the Court find any authority directly on point. Thus, the Court focuses on comparing the two SF-95s. In the November 27, 2023, SF-95, Mr. Noe alleges that he "complained of extreme back pain to [BOP medical providers] for years" but "was denied care." [Doc. 262-5 at 2]. Mr. Noe further alleges that "due to [BOP medical providers] denying [him] care for [his] herniated disks in [his] lower back for years, [he] was forced to compensate with [his] upper back," leading to him to "[blowing] a disk in [his] upper back" and "unbearable severe pain." [*Id.*]. The date of this incident is recorded as November 27, 2023, [*id.*]—months after his August 14, 2023 fusion surgery. This Court finds that this SF-95 gives the BOP notice of the new injury that post-dates Mr. Noe's fusion surgery and the "unbearable severe pain" to Mr. Noe's upper back resulting therefrom. [*Id.*]. Under the prevailing case law, this Court finds that the November 27,

2023, SF-95 would be insufficient to give the Government notice of the specific acts that occurred on or after July 8, 2022 to August 14, 2023 that constitute medical negligence.

By contrast, the August 27, 2024, SF-95 specifically alleges that "[a]fter many unreasonable delays and misdiagnoses," Mr. Noe underwent a lumbar spine MRI but he did not see a neurosurgeon for another six months, "an unreasonable delay." [Doc. 262-6 at 4]. The neurosurgeon then recommended fusion surgery, which was not completed for another six or so months, constituting "another unreasonable delay." [*Id.*]. And before the surgery, "the BOP did not provide [Mr. Noe] with effective pain treatment for [his] symptoms related to [his] back condition," despite his complaints. [*Id.*]. The August 27, 2024, SF-95 alleges that the "BOP provided severely inadequate and delayed treatment for disc herniation and degeneration and nerve impingement in [Mr. Noe's] spine, leading to extreme pain and significant damage to [his] health." [*Id.* at 2]. The August 27, 2024, SF-95 further discloses that "[t]he medical care provided by BOP was inadequate and excessively delayed, causing [Mr. Noe] unnecessary significant pain, suffering, and risk of serious injury." [*Id.* at 4]. Thus, the conduct at issue in the August 27, 2024, SF-95 arises before his fusion surgery that occurred on August 14, 2023.

Mr. Noe's reliance on the Tenth Circuit's decision in *Lopez v. United States* supports this conclusion. *See* [Doc. 267 at 9–11]. As Mr. Noe notes, *Lopez* held that a claim that a hospital was negligent in credentialing and privileging a physician was not encompassed in an administrative claim about a different physician's medical negligence, because the facts alleged in that administrative claim did not give the government notice of the credentialing and privileging theory. [*Id.* at 9–10 (citing *Lopez*, 823 F.3d at 971, 975–77)]. The inquiry in *Lopez*, then, was whether an administrative claim's allegations

were broad enough to encompass a theory of negligence that was never described in the claim. Here, the alleged medical negligence turns on particular acts undertaken by specific providers during Mr. Noe's course of treatment—one set of conduct that occurred before and resolved with his spinal fusion surgery and another, separate injury that flowed but was distinct from the first.

Accordingly, the Court concludes that the August 27, 2024, SF-95 is not the functional equivalent of the November 27, 2023, SF-95. The limitations period properly runs from the August 27, 2024, SF-95 for Mr. Noe's claims that arise on or after July 8, 2022 through August 14, 2023. The FTCA claim in this action, however, does not include any allegations with respect to Mr. Noe's upper back injury that allegedly occurred on or about November 27, 2023. The Motion for Summary Judgement is respectfully **DENIED**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment as to Case No. 25-cv-01258 [Doc. 262] is **DENIED**; and

(2) A Telephonic Status Conference is **SET** for **October 7, 2026 at 10:30 a.m.** for the purposes of setting a Final Pretrial/Trial Preparation Conference and trial in this matter. Counsel shall participate using the following dial-in information: 571-353-2301; Access Code: 783456374.

DATED: September 16, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge